# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHN HUBNER,**

      **Plaintiff,**

**-vs-**                       Case No. 6:09-cv-995-Orl-DAB

**MICHAEL J. ASTRUE, Commissioner of
Social Security,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for social security disability insurance benefits and supplemental security income. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, originally alleging an onset date of May 24, 2000 (R 16, 377). The applications were denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 396-421). At hearing, Plaintiff waived his claim for Disability Insurance Benefits, and amended his onset date to January 24, 2002 (R. 400-403). On December 15, 2006, the ALJ issued an unfavorable decision (R. 13-25), finding Plaintiff was not disabled. More than two years later, the Appeals Council denied Plaintiff's Request for Review (R. 4-8; 382-395), making the ALJ's decision the final decision of the Commissioner.

Following denial of his Request for Review, Plaintiff timely filed the instant suit (Doc. No. 1), and the parties consented to the jurisdiction of the undersigned magistrate judge. The matter has been fully briefed and is now ready for resolution.

### NATURE OF CLAIMED DISABILITY

Plaintiff claims to be disabled due to a history of "psychiatric illness, heart disease and diabetes" (R. 67).

*Summary of Evidence Before the ALJ*

Plaintiff was fifty years old at the time of his alleged onset date, with a high school education and past relevant work experience as a residence advisor (counselor) and painter (R. 23 Findings 6-8; 98).

Plaintiff's medical history is set forth in detail in the ALJ's decision, and in the interests of privacy and brevity, will not be repeated here except as necessary to address Plaintiff's objections. In addition to the medical records of treating providers, the record includes the opinions of non-examining state agency physicians and consultants, the forms and reports completed by Plaintiff with respect to this claim, as well as the testimony of Plaintiff at hearing and the testimony of a Vocational Expert. By way of summary, the ALJ found Plaintiff had severe impairments of status post myocardial infarction, diabetes, hypertension, bilateral optic neuritis, a history of obesity, a history of hepatitis C infection, and an affective disorder (R. 19 Finding 3) and, with the exception of the finding of bilateral optic neuritis, the record supports this uncontested finding.[1] The ALJ determined that these impairments were not severe enough to meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 19), and determined that Plaintiff retained the residual

---

[1] The Appeals Council noted that the ALJ, in making this finding, cited to a record that did not relate to Plaintiff (R. 5). There is no basis for concluding that Plaintiff has bilateral optic neuritis and it is not an issue in this appeal.

functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for about six hours in an eight-hour workday, but should avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, or hazardous machinery (R. 19). The ALJ further found Plaintiff's affective disorder and substance abuse (in remission) imposed mild restrictions in activities of daily living ("ADL") and maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace without repeated episodes of decompensation. *Id.* The ALJ found Plaintiff "can complete simple tasks on a regular basis." *Id.* The ALJ determined that Plaintiff could not return to his past relevant work but, relying on the testimony of the Vocational Expert, determined that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform (R. 23), and he was therefore not disabled.

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff raises several issues, many of which are interrelated. Specifically, Plaintiff contends: 1) the Appeals Council failed to properly consider new and material evidence submitted with the Request for Review; 2) Defendant failed to collect all relevant medical evidence, the record is incomplete and the amended onset date should be set aside; 3) the ALJ failed to consider all of Plaintiff's severe impairments; 4) the RFC is not supported by substantial evidence; and 5) the ALJ failed to follow Social Security Ruling 96-7 when assessing the Plaintiff's credibility.

### *New and Material Evidence*

In a Request for Review before the Appeals Council, the Plaintiff submitted a forensic psychological evaluation dated November 18, 2003, prepared by John Daignault, Psy.D. (R 382-395). Although the report indicates that it was prepared pursuant to a request of Plaintiff's attorney,[2] it was not before the ALJ and was not presented to the Commissioner until the Request for Review. This Court must consider evidence not submitted to the ALJ but considered by the Appeals Council in reviewing the administrative decision. *Ingram v. Commissioner of Social Security*, 496 F. 3d 1253, 1258 (11th Cir. 2007). It is incumbent upon the Court to evaluate the record as a whole to determine

---

[2] The attorney is not the same attorney that appeared briefly on Plaintiff's behalf at the administrative level. The report reflects that the requesting Massachusetts attorney asked the psychologist to determine whether, in his opinion, "there is any reason to doubt that [Plaintiff] was the subject of childhood sexual abuse" by a member of the clergy (R. 384). At hearing, Plaintiff testified as to the abuse and it appears that there was a settlement (R. 403). It is assumed that this report was sought in connection with Plaintiff's claim against the clergy, and was not solicited for the purposes of his social security disability claim. Regardless, to the extent it purports to set forth relevant findings, it is addressed herein.

whether substantial evidence supports the ALJ's decision and to determine whether the Appeals Council properly denied Plaintiff's request for review because the ALJ's decision was not contrary to the "weight of the evidence currently of record." *Ingram*, 496 F.3d at 1261. Here, the Appeals Council reviewed the report, but found no basis for changing the ALJ's decision. Applying the above standard, the Court finds no error.

The report at issue states that it is based on a review of school, employment and criminal records[3] and a mental status examination and interview of Plaintiff (R. 385). Although there are no mental status examination findings and no specific assessments as to functionality, Dr. Daignault purports to identify several diagnoses including Post Traumatic Stress Disorder, Panic Disorder and Major Depressive Disorder (R. 389). Dr. Daignault concludes that Plaintiff "has been seriously and adversely affected in all major areas of his functioning as a result of these disorders." (R. 390). Plaintiff contends that this is new, non-cumulative evidence of material findings that contradict the ALJ's determination and warrants remand.

Generally speaking, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly

---

[3] Interestingly, the consultant did not review any medical records. *Id.*

conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, Dr. Daignault was a one time examiner and not a treating physician, so this report is not entitled to controlling weight. Further, the report does not appear to be supported by objective findings and is, in fact, contrary to the findings and conclusions of Plaintiff's long time treating psychiatrist, Dr. Greer. In addition to failing to review any medical records, the report cites no results of the mental status exam allegedly conducted and does not purport to set forth the conclusions using the generally accepted Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) classification system. By contrast, Plaintiff's treating psychiatrist Dr. Greer assessed Plaintiff with seasonal affective disorder that was fairly stable, and consistently assessed a GAF[4] of

---

[4]Global Assessment of Functioning.

55, indicating only moderate symptoms (R. 192, 196, 199, 202-03, 207-08). Contrary to Dr. Daignault's assessment that Plaintiff has post-traumatic stress disorder (PTSD) and a polysubstance abuse disorder that has "devastated his functional capacities," Dr. Greer's records repeatedly note that Plaintiff's alcohol abuse was in remission and show no PTSD diagnosis or other significant impairment to his functional capacity (R. 192, 196, 199, 202-03, 207-08). Indeed, Dr. Greer provided Plaintiff a letter at his request upon his move to Florida that notes her long term treatment of Plaintiff and states that he "has been doing fairly well" with a regimen of Celexa, Wellbutrin and regular AA attendance (R. 207). Moreover, treatment notes from Plaintiff's other treating providers near the time of the evaluation also show Plaintiff's depression to be stable and make no mention of the severe findings set forth in this report (*see, e.g.,* R. 252– noting depression stable, alcohol free for seven years, "appears in good spirits"; 249 – noting "no complaints"; 247 – noting "recent increase of his depression meds with good improvement"). The substantial evidence of record supports the finding that Plaintiff is not disabled by mental illness. The Court finds no basis to support a conclusion that the Appeals Council did not adequately consider the additional evidence. *See Hoffman v. Astrue,* 259 Fed.Appx. 213 (11th Cir. 2007) (unpublished) (remand not warranted). Since there is substantial evidence in the record as a whole that supports the ALJ's finding, and the evidence submitted to the Appeals Council would not have changed the outcome, the Court finds no error.

*The Amended Onset Date*

Plaintiff next argues that the ALJ failed to develop the record in that she did not obtain medical records dating back to the original onset date alleged. Plaintiff also contends that "it is highly unlikely that he understood the complicated implications" of amending his onset date, and that date should therefore be set aside.

At hearing, Plaintiff clearly amended his onset date, and the suggestion that he was somehow tricked or misled into doing so is without merit, as the following illustrates:

> ALJ: All right. I guess my question to you would be, the date last insured in this case is September 30, 2001, for the Title II claim. There were few if any documents in the file that go back to that date. What's your position there?
>
> Plaintiff's Representative: My position on that, Your Honor, is concurrent with yours. There are few documents showing the severity of a claim prior to the date last insured. It's my contention that we will waive the Title II component of this case and focus strictly on the supplemental security income component.
>
> ALJ: And you have discussed this, of course, with Mr. Hubner?
>
> Rep: I have, Your Honor.
>
> ALJ: And , Mr. Hubner, you're in agreement with your representative's last statement?
>
> Clmt: Yes, Your Honor.
>
> ALJ: Pertaining to the time of disability? Is that correct?
>
> Clmt: Yes, Your Honor.

(R. 400).
> \* \* \*
> Rep: Your Honor, I'd ask the onset date be amended to 1/24/2002.
>
> ALJ: And, Mr. Hubner, do you wish to amend the alleged onset date to January 24, 2002?
>
> Clmt: Yes, Your Honor. And there was one other job that I Suffolk Mental Health before I worked for the homeless shelter.
> \* \* \*
>
> ALJ: All right. And do you agree with Mr. Moore that you're amending your alleged onset date to January 24, 2002?
>
> Clmt: I agree with my – yeah.

(R. 402-3).

The Court is also unconvinced by Plaintiff's contention that it was the responsibility of the ALJ, and not Plaintiff, to obtain Dr. Greer's records for the years 2000-2001. Under 20 C.F.R. §

416.912(d), the Commissioner will "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s][the] application." Notwithstanding this regulation, the burden is on the claimant to show that he is disabled and, therefore, he is responsible for producing evidence to support his application. *McCloud v. Barnhart,* 166 Fed.Appx. 410, 418, 2006 WL 177576, 6 (11th Cir. 2006), *citing* 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c); *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003 (per curiam). The application at issue was filed in 2005 and the record shows clinical and laboratory reports from MGH Chelsea Health Center were provided for the period of July 1, 1999 onward (R. 192-286). Among the many treatment notes included in these records are notes that indicate his depression was stable (May 4, 2000 - R. 275) or improving (August 2, 2001-R. 264). To the extent there may be other records that predate the alleged onset date that were not included by the provider in the documents produced, it was Plaintiff's responsibility to obtain them.[5] No error is shown.

### *The ALJ Considered All the Impairments*

Plaintiff contends next that the ALJ erred in failing to consider Plaintiff's cervical radiculopathy as a severe impairment at step 2 of the sequential evaluation process, and "ignored the evidence in the record." *Brief* at 12. Plaintiff asserts that he suffers from "severe cervical impairments," citing his hearing testimony, an MRI of the cervical spine which showed a mild spondylotic spur plus disk change at C4-5, mild spondyltic spur formation with mild to moderate compromise on the right at C5-6 and mild spondylitic spur with disk change at C6-7 (R. 322), and treatment notes regarding Plaintiff's mild canal stenosis (R. 367, 317).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R.

---

[5] There is also no merit to the contention that the ALJ should have recontacted Dr. Greer. There was no conflict or ambiguity with respect to her treatment notes, nor was the record inadequate to determine disability. *See* 20 C.F.R. § 416.912(e)(1).

§ 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). This case proceeded through the entire process and was determined at step five.

While it is true that the ALJ did not list the cervical impairment at step two of this process, the ALJ did not "ignore" Plaintiff's degenerative disc disease, as she discusses it in her determination and concludes that it is not disabling (R. 22). The ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). The ALJ did so here. Indeed, the ALJ found that Plaintiff had met his burden of establishing that he was incapable of returning to past relevant work, and determined this case at the fifth and final step. There is no showing that the ALJ's failure to list this impairment at step two is anything but harmless.[6]

*The RFC Is Supported by Substantial Evidence*

Plaintiff contends that the ALJ's RFC determination is unsupported and should be reversed because "[i]n this case, the only relevant evidence to the issue of disability is that of the Plaintiff's

---

[6]This is especially so in light of the ALJ's conclusion that the disc disease was not disabling. The ALJ noted that the condition did not require hospitalization or emergency room treatment; there was no marked diminished range of motion or muscle atrophy, Plaintiff walks unassisted and is able to stand with his heels and toes, motor strength examinations were normal, and Plaintiff reported that he was lifting boxes while moving his girlfriend out of her apartment (R. 22). Substantial evidence supports these findings. The medical record does not establish any disabling cervical impairment. Moreover, Plaintiff's activities of daily living also belie any contention that this impairment, alone or in combination with his other impairments, is disabling. He drives, shops, is able to do all household chores, takes care of all of his personal care independently, is able to stand and sit, and the medical records are replete with directions that he exercise. *See, e.g.,* R. 407-08, 126-27, 201, 191, 223, 234.

treating and examining physicians. There are no other opinions in opposition to this finding other than the State Agency opinions." To the extent the Court understands this argument, it appears that Plaintiff is contending that an RFC must be based on a physician's opinion and, further, Plaintiff objects to the finding as being unsupported by consultative examiner opinions, which were not obtained. Needless to say, the Court is unpersuaded.

As the Eleventh Circuit Court has recently observed: "We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue,* 2010 WL 582617, 6 (11th Cir. 2010). Here, the record contains numerous medical treatment notes from Plaintiff's many treating physicians, not one of whom has opined that Plaintiff is disabled or even seriously limited. The ALJ reviewed those records in detail in her opinion, and also considered the evidence of non-examining state agency consultants, Plaintiff's testimony, and all other evidence of record in formulating the RFC (R. 19). That is precisely what is required.

*The Credibility Finding*

Plaintiff's final contention is that the ALJ erred in evaluating his credibility, pursuant to Social Security Ruling 96-7p, which Plaintiff contends:

> requires the ALJ to first consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the Plaintiff's pain or other symptoms. The ALJ must then consider whether the condition could reasonably be expected to produce the individual's symptoms and must evaluate the intensity, persistence or functionally limiting effects of these symptoms.

*Brief* at 15-16. Plaintiff asserts that the treatment records assessed pain symptoms which support his functional limitations and argues that none of his treating providers ever cited his symptoms as disproportionate to the objective findings. Further, Plaintiff contends that the ALJ "ignored" this evidence, and evidence that he is a reliable historian.

-11-

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ cited the proper standard and found that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but that the statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible (R.21-22). This finding is supported by substantial record evidence. Although Plaintiff appears to contend that he had disabling pain, the treatment notes do not reflect disabling pain complaints, nor

is there any treatment for severe pain.[7] At hearing, Plaintiff noted that his anxiety and shortness of breath were his main issues (R. 404), and, in a pain report dated June 3, 2005, Plaintiff described his pain as mild, noted that it did not prevent him from performing many of his daily activities, and that he took no medications for it (R. 122-24). With respect to his treatment records, Plaintiff regularly had normal cardiac findings and electrocardiogram results, unremarkable enzyme tests, no ischemia, and well-controlled heart rate and blood pressure (R. 19-22, 180, 184, 188, 200, 204, 209, 220-21, 225, 230, 232-34, 238, 241, 243, 245, 247, 249, 252, 258). Although he was diagnosed with Hepatitis C, he was completely asymptomatic, and his hypertension and diabetes were controlled with diet and medication (*See*, e.g., R. 360, 336, 338, 232, 254). As noted, his depression was stable, with no hospitalizations or emergency room treatment required. The ALJ properly relied on this evidence, as well as the other evidence noted in her determination, to support her credibility determination.[8] The finding is supported by substantial evidence.

## CONCLUSION

As the administrative decision is supported by substantial evidence and was made in accordance with proper legal standards, it is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on June 23, 2010.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[7]The records reflect that he was given Flexeril for "neck discomfort" and his physician reported that this medication, taken 3-4 times a week, "has worked well." (R. 356).

[8]Plaintiff takes issue with the ALJ's misinterpretation of a treatment note finding no "give away weakness," contending that such a clinical finding supports the credibility of a patient. The Court finds this contention to be unavailing. Even under Plaintiff's interpretation, the treatment note does not serve to support disability here. As noted by the ALJ, Dr. Chen noted that Plaintiff's cervical spine MRI results showed only mild and mild to moderate findings with no compression, assessed Plaintiff with only mild cervical spine disease, and found normal motor and power testing, normal sensory exam results, normal coordination, symmetric reflexes, and generally unremarkable gait findings (R. 20, 22, 356). Moreover, it was Dr. Chen who noted that Plaintiff's Flexeril, taken as needed, seems to be "working well." (R. 355-56).

Copies furnished to:

Counsel of Record